## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO:


**HILDA SULTAN and**
**CRAIG SULTAN,**

     **Plaintiffs,**

**v.**

**SAFECO SURPLUS LINES INSURANCE COMPANY**

**A Washington Corporation,**

     **Defendant.**

_____/

### COMPLAINT

Plaintiffs Hilda Sultan and Craig Sultan, sue Defendant Safeco Surplus Lines Insurance Company, and allege:

### I. THE PARTIES, JURISIDCTION, AND VENUE

1.     This is an action for damages in excess of $75,000 exclusive of interest, attorney's fees, and costs.

2.     Plaintiffs Hilda Sultan and Craig Sultan are both natural persons.  At all time material they resided in, and continue to reside in, Broward County, Florida.

3.     Defendant Safeco Surplus Lines Insurance Company (hereinafter "Safeco") is a Washington corporation with its principle place of business in Seattle, Washington.   At all times material Safeco was authorized by the Florida Department of Financial Services to sell surplus lines property insurance policies in the State of Florida.

At the present time, Safeco remains authorized to sell surplus lines insurance policies in the state of Florida at the present time.

     4.     There is complete diversity of citizenship between the parties. Accordingly, this Court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332.

     5.     Venue is proper in the Southern District of Florida because the acts and omissions giving rise to this lawsuit occurred here.

## II. GENERAL ALLEGATIONS

     6.     All conditions precedent to this action have been performed, excused, or waived.

     7.     Non-Party EverHome Mortgage Company (hereinafter EverHome) is engaged in the business of servicing residential mortgage loans in the State of Florida, and throughout the United States.

     8.     As a mortgage servicer, EverHome contracts with the beneficial owners of mortgage loans to collect payments from borrowers, and to perform substantially all other customer service and administrative functions that those loans require.

     9.     EverHome does not actually own loans in its servicing portfolio.  It is only the agent of the beneficial owners of the mortgage loans. These beneficial owners compensate EverHome for performing the loan servicing functions.

     10.     EverHome therefore does not a incur a direct loss if a mortgage in its servicing portfolio goes into default.

11.     Non-party EverInsurance Inc. (hereinafter EverInsurance) is a Florida licensed insurance agency.  At all times material, EverInsruance was engaged in the business of selling insurance policies on behalf Safeco.

12.     EverInsurance received a commission whenever it sold a Safeco insurance policy.

13.     EverHome is related by common ownership and management to EverInsurance.

14.     EverInsurance received a commission from Safeco whenever EverHome purchased an insurance policy from Safeco.

15.     EverHome and EverInsurance both share an office located 8100 Nations Way, in Jacksonville Florida, 32256.

16.     The Jacksonville, Florida office is the principle place of business for both EverHome and EverInsurance.

17.     As part of its duties as a mortgage servicer, EverHome was  responsible for monitoring the loans in its servicing portfolio and ensuring that the mortgagors maintained hazard insurance that satisfied the contractual requirements set forth in each respective mortgage and promissory note.

18.     If EverHome determined that a property within its servicing portfolio was not appropriately insured, it was authorized to procure insurance coverage for that property.  This type of insurance coverage is commonly referred to as "force-placed", "lender-placed" or "creditor-placed" insurance coverage. Hereafter, this type of policy will be referred to as "force-placed."

19.     The premiums necessary for any force-placed insurance policy would customarily be advanced by EverHome.

20.     EverHome would then attempt to collect any premiums advanced from the owner of any affected property.

21.     For collection purposes, the premiums charged for force-placed insurance would be treated the same as charges for principle and interest.  If a borrower failed to pay the premiums charged for force-placed insurance, EverHome would eventually take legal action necessary to recover those premiums, including declaring a default, accelerating the promissory note, and commencing a mortgage foreclosure action against the affected homeowner.

22.     If all efforts to collect the force-placed insurance premiums from the affected homeowner were unsuccessful, the beneficial owner of the particular mortgage loan would reimburse EverHome for the funds advanced to purchase the force-placed insurance policy.

23.     In at least some cases, EverHome would be permitted to retain the funds it collected on the beneficial owners' behalf for payments on other loans as reimbursement for any force-placed insurance expenditures.   Thus, EverHome was assured that it would not have to absorb the cost of the force-placed insurance policies that it purchased for the loans in its servicing portfolio.

24.     Pursuant to an express agreement among Safeco, Everhome and EverInsurance, during the period of December 4th, 2006 through December 4th, 2007, EverHome would purchase force-placed insurance policies from Safeco.

25.     In exchange for the purchase of force-placed insurance policies by EverHome, Safeco would pay commissions to EverInsurance.

26.     Safeco was fully aware of the methods that EverHome would use to collect premiums for force-placed insurance policies.  Accordingly, Safeco was aware that a borrower who did not, or who could not, pay the premium for a force-placed insurance premium could lose their home to foreclosure.

27.     Safeco was also aware that EverHome would never incur the expenses associated with paying a force-placed insurance policy premium, and arranged its commission structure with EverInsurance accordingly.

28.     The premiums that EverHome initially paid for force-placed insurance policies during the period of December 4th, 2006 through December 4th, 2007 dramatically exceeded the premiums that other insurers would offer to homeowners for similar risks.

29.     The commissions that Safeco paid to EverInsurance during the period of December 4th, 2006 through December 4th, 2007 dramatically exceeded the premiums that other insurers would customarily pay to other insurance brokers for residential policies.

30.      Sometime prior to December 4th, 2006, EverHome acquired the servicing rights to a mortgage loan secured by a home owned and occupied by Plaintiff Hilda Sultan.  This home is located in Broward County, Florida.

31.     On or about December 4th, 2006, EverHome purchased an insurance policy from Safeco insuring the above referenced Sultan property.  The premium for this policy was $33,198.57

32.     At that time, residential property and casualty coverage was available from traditional providers for less then $4000.00, a small fraction of the premium paid for force-placed coverage.  The traditional coverage actually provided greater protection because it normally included coverage for personal property and homeowner's liability. Conversely, force-placed insurance only covered the collateral for the loan.

33.     Safeco paid EverInsurance a commission equal to $7,137.57, an amount that was approximately twice the appropriate amount for the entire insurance policy.

34.     Neither EverHome, EverInsurance, nor Safeco ever notified Plaintiffs that a force-placed insurance policy had been purchased for their Broward County home.

35.     Before Plaintiff's loan was transferred to EverHome's servicing portfolio, Plaintiff's had obtained an insurance policy.  This policy was obtained with the assistance of an insurance agency doing business as "Landmark Insurance."

36.     Pursuant to the written mortgage contract and promissory note between Plaintiff Craig Sultan and EverHome's principal,[1] Craig Sultan was obligated to make monthly payments.  Part of the monthly payments were to be used to fund an escrow account.  The funds from this escrow account were to be used to pay the premiums required to renew the insurance policy that had been procured through Landmark Insurance.

37.     Plaintiffs timely paid every monthly payment in full.

38.     Accordingly, Plaintiffs believe that their insurance coverage did not lapse, and that there was no legitimate reason for EverHome to procure force-placed insurance.

---

[1] The identity of the beneficial owner of the subject mortgage loan was never known to Plaintiffs.  The vast majority of residential mortgage debt is owned by mortgage securitization trusts, the Federal National Home Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corp. (Freddie Mac). Accordingly, Plaintiffs expect that their EverHome serviced loan actually belong to one of the three.

39.     Plaintiffs first learned that a force-placed insurance policy had been purchased in January, 2008, when they refinanced their EverHome serviced loan.

40.     EverHome demanded that Plaintiffs pay $21,711.11, which EverHome claimed represented the balance of the force-placed insurance after application of that portion of Plaintiff's monthly payments that were applied to the premium. If Plaintiff's did not pay, EverHome would not agree to satisfy the mortgage.

41.     Planitiffs did in fact pay the sums demanded by EverHome so that they could complete their refinance transaction.

### III. CLAIM FOR RELIEF BASED ON SAFECO'S VIOLATIONS OF SECTION 626.9551 FLORIDA STATUTES

42.     Plaintiffs re-allege and incorporate by reference the allegations set for in Paragraphs 1 through 41 above.

43.     The conduct described above violates section 626.9551(1)(a)  Florida Statutes because EverHome, acting as Safeco's agent and pursuant to the agreement between EverHome, EverInsurance, and Safeco, required Plaintiffs to purchase the subject Safeco policy and to pay the exorbitant premiums required thereby.  If Plaintiffs did not pay for the Safeco force-placed insurance policy, EverHome would not have released the mortgage lien it claimed on behalf of its principal, and it would not have been possible for Plaintiffs to complete their refinance transaction.

44.     The conduct described above violates section 626.9551(1)(c) Florida Statutes, because the exorbitant premium includes prohibited indirect separate charges in connection with the handling of the subject Safeco force-placed insurance policy, which was required in connection with Plaintiff's EverHome serviced loan.  The prohibited

indirect separate charges include, but are not limited to the $7,137.57 commission that Safeco paid to EverInsurance, because this charge was passed on to Plaintiffs. EverHome was acting as Safeco's agent when it collected these prohibited charges.

45.    Similar prohibited indirect separate charges are routinely assessed to other borrowers in connection with the purchase of other force-placed insurance policies.

46.    During the time period between December 4th, 2006 through December 4th, 2007, EverHome permitted Safeco to monitor the insurance policies for the loans in its servicing portfolio.  In the course of permitting Safeco to monitor these loans, EverHome provided "insurance information" as that term is described in section 626.9551(1)(d) to Safeco to facilitate the coercive purchase of force-placed insurance policies. This includes insurance information concerning Plaintiffs.

47.    EverHome provided this information at Safeco's request and in furtherance of EverHome, EverInsurance, and Safeco's common objective to obtain fore-placed insurance policies for Safeco. Safeco induced EverHome to provide this information by agreeing to pay, and actually paying, inflated commissions to EverInsurance. By inducing EverHome to provide this information, Safeco violated section 626.9551(1)(d), Florida Statutes.

48.    Plaintiffs have been damaged by the actions of Safeco, EverHome and EverInsurance described above. Pursuant to section 624.155(1)(a)2, Florida Statutes, Plaintiff's may bring a civil action against Safeco for the above cited violations of the Florida Insurance Code

49.    The arrangement between Safeco, EverHome and EverInsurance described above constitutes a civil conspiracy to violate the above cited sections of The Florida

Insurance Code. Accordingly, Safeco is liable for the actions of EverHome and EverInsurance taken in furtherance of that conspiracy.

50.     Plaintiffs have complied with all conditions precedent, including filing a Civil Remedy Notice of Insurer Violation with the Florida Department of Financial Services.  A true and correct copy of the Civil Remedy Notice of Insurer Violation is attached hereto as Exhibit "A."

51.     Safeco received Plaintiffs' Civil Remedy Notice of Insurer Violation, and responded thereto.  However Safeco did not cure any of the violations alleged therein.

52.     Sixty days have now passed since Safeco received Plaintiffs' Civil Remedy Notice of Insurer Violation.

53.     Safeco's actions described above are willful, wanton, and malicious or are in reckless disregard of the rights of its policyholders, including Plaintiffs. These actions are also in reckless disregard of the rights of other affected borrowers and the ultimate beneficial owners of the affected mortgage loans.

54.     Safeco's conduct described in paragraphs 24-28 and 46, and the statutory violations set forth in paragraph 44, 46 and 47 occur with such frequency that they represent Safeco's general business practices.

55.     Moreover, the unconscionable conspiracy between Safeco, EverHome and EverInsurance to force struggling borrowers to pay exorbitant force-placed insurance premiums has caused a large number of other Florida homeowners to lose their homes to foreclosure.

56.     Plaintiff's have retained undersigned counsel to represent them in this action.  Pursuant to section 624.155(4) Florida Statutes, Safeco is liable for Plaintiffs' attorney's fees and litigation costs incurred in bringing this lawsuit.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor for actual damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys fees, and litigation costs.

### IV. CLAIM FOR RELIEF FOR COMMON LAW FRAUD

57.     Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 2 through 41 above.

58.     This Court has supplemental jurisdiction over the claims asserted in this count pursuant 28 U.S.C. §1367.

59.     While it was attempting to collect payment for the force-placed insurance policy premium, EverHome represented to Plantiffs' that the premium was incurred in connection with a bonafide purchase of an insurance policy.

60.     These representations were false. The premium was dramatically inflated. This inflated premium was due in large part to the agreement between EverHome, EverInsurance, and Safeco whereby EverInsurance would receive a large commission in connection with the placement of the insurance policy.

61.     EverHome also concealed the fact that the commissions would be paid to EverInsurance, and that these commissions inured to EverHome's benefit.

62.     EverHome further represented that the increased premium was necessary because force-placed insurance providers are not able to inspect the risk to be insured

prior to issuing the insurance policy. Therefore, EverHome claimed that the subject force-placed insurance policy involved more risk to Safeco.

63.     These statements were false. In fact, it is extremely unusual for insurers to inspect the interiors of residential risks prior to issuing coverage.

64.     Furthermore, force-placed insurance is generally more profitable for insurers than traditional insurance because comparatively fewer claims are made per premium dollar paid.

65.     Safeco knew, or should have know, that EverHome would make these false statements in its efforts to collect the premium from Plaintiffs.

66.     The above described actions of EverHome, EverInsruance, and Safeco were done pursuant to an agreement between all three and constitute a civil conspiracy. These actions were taken in furtherance of the civil conspiracy's objectives. Accordingly, Safeco is jointly and severally liable for its own actions, as well as the actions of EverHome and EverInsurance.

67.     Both EverHome and Safeco knew that these statements were false.

68.     Plaintiffs relied on these statements.

69.     Relying on these false statements, Plaintiffs' paid the entire inflated premium that Everhome demanded.

WHERFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor in the amount of $33,198.57, plus pre-judgment interest, post-judgment interest and litigation costs.

## IV. DEMAND FOR TRIAL BY JURY

70.     Plaintiff demand trial by jury on all claims so triable.

Respectfully Submitted.

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1000 W.McNAB RD. Ste. 150
POMPANO BEACH, FL 33069
(954) 942-5270
Fax:(954) 942-52782
Email. jgolant@jeffreygolantlaw.com
By
**/S/ Jeffrey N. Golant Esq.**
Fla. Bar. No. 0707732